### KEPPLER v. STEVENS. (No. 9270.)

Court of Civil Appeals of Texas. Galveston. March 4, 1929.

Rehearing Denied March 21, 1929.

Jones & Jones, of Houston, for appellant.
Earle M. Manint and Thomas R. Cox, both of Houston, for appellee.

LANE, J. This suit was brought by F. L. Stevens against Carl Keppler to recover upon six promissory notes, alleged to have been executed by Keppler and made payable to the order of Brenard Manufacturing Company of Iowa City, Iowa. Five of said notes were for the sum of $120 each, and the sixth one for the sum of $85, all dated February 24, 1927.

The plaintiff alleged that the notes had been, by the payee, assigned to him for a valuable consideration before maturity, and that he was the legal owner and holder thereof. He also sued for reasonable attorney's fees as stipulated in the notes. Defendant answered by plea of non est factum and general denial.

The cause was tried by the court without a jury, and judgment was rendered for the plaintiff for the principal sum of the notes and for 10 per cent. attorney's fees, and defendant has appealed.

Appellant insists that the finding of the court, that appellant executed the notes, is against the great weight and preponderance of the evidence, and for that reason the judgment based on such finding should be reversed and the cause remanded.

We think appellant's contention should be sustained. Only three witnesses testified in behalf of appellee relative to the execution of the notes, namely, M. A. Pheney, H. W. Gordon, and F. W. Ilfrey. All of these witnesses qualified as experts on handwritings. None of them knew appellant, nor had any of them ever seen him sign his name or execute any other writing. They were furnished with the admitted signature of appellant, signed to his sworn plea of non est factum, and based their conclusions as to whether or not the notes had been signed by appellant solely upon a comparison of the signature on the plea with those on the notes.

M. A. Pheney testified that from the comparison of the signatures on the notes with that on the plea he was of opinion that they were all signed by the same person; that the width of each of the signatures on the notes is the same; that each of the signatures from the extreme left to the extreme right measures exactly the same.

The testimony of both Gordon and Ilfrey was practically the same as that of Pheney. Each of them testified that in his opinion Mr. Keppler signed the notes, judging by the comparison made. They also testified that they had never seen two signatures made by the same man which were absolutely identical in every respect.

Appellee Stevens testified by deposition that he was the legal and sole owner and holder of the notes; that he purchased them from Brenard Manufacturing Company for

value, etc., before maturity, and that at the time of such purchase he had no notice of any infirmity in them; that he was not now, nor was he ever directly or indirectly, in any way connected with Brenard Manufacturing Company.

Appellant testified that neither of the signatures to the notes was his signature; that he never signed any of them or authorized any one to sign them for him; that he had never seen any of the notes until they were presented to him for payment; that he never knew of the Brenard Manufacturing Company, and never had any transaction with them; that about February, 1927, a stranger came to his place of business and asked him if he was interested in radios; that he told him no, that he was in the oil business and could not sell radios; that the stranger asked him if he could explain, and that he said all right, and that at this stage of the conversation Mr. McConnell stepped in his office; that this stranger wanted him to solicit purchases for the radios; that the stranger said that all he (Keppler) would have to do was to solicit names of people who wanted radios, and said that after he got a list of names to send them in to the company, and that would not cost him anything; that all he was to do was to solicit trade, and that, if any were sold he (Keppler) would get a commission; that he told the stranger that he would not be interested unless he could see one of the radios, and asked him if he would bring one out; that he thought the man was working for some one in Houston; that the stranger said he would bring one out, but to do so he would have to get his name so as to show where it should be delivered; that at the request of this man he wrote his name on a piece of paper, and the man took it and left with it, and that he had never seen nor heard of him since; that he never ordered anything from this man and he never brought him any instrument; that he does not remember the name of this man; that he never received a radio from this man or from Brenard Manufacturing Company; that he wrote his name for this man only one time, and that signature was not to any note; that the paper he signed was not like either of the notes; that in the conversation mentioned nothing was said about a note; that his business was a filling station business and he had been engaged in it for three years; that he did sign a paper shown him, but he did not know what it was, as he did not read it because it was in fine print, and he thought it was only an order to bring a radio out for him to see, but it now appears to have been an agency agreement between himself and Brenard Manufacturing Company.

W. H. McConnell testified: "That he lived in Harris County, Texas, and knew the appellant and was at his place of business on February 24, 1927, and was there when the man came talking the sale of radios; that he heard all that was said; that nothing was said about notes; no paper was drawn up at that time; that the salesman asked Keppler to sign his name on a piece of paper so it would be known where to take a machine; it would state just where he was located and the appellant just wrote his name one time; that there was no discussion between them about signing notes; no note was mentioned; that witness had never seen the man before and had never seen him since; Keppler signed his name one time; he did not write it any more than that; I saw the paper he signed leisurely. As to the words of this man, it was about like this: 'Keppler said he would not be interested without he could see a machine,' and the salesman remarked: 'If you will sign this I can get you one out here and demonstrate it.' I went to the defendant's place to sell oil. I heard the discussion. This fellow drove up just ahead of me and he walked in just about ten feet ahead of me. He did not know what paper appellant signed but would have known if it was a note. I left a few minutes after the salesman left. Witness was in a position to hear everything that went on in the conversation. Keppler said it is dark and I cannot read without any glasses, but he said it is just stating where you are located and he just wrote his name one time."

The stranger, or supposed salesman, was not a witness at the trial, and it is not shown that plaintiff made any effort to secure his testimony or to learn where he could be found; nor was there any testimony by any one connected with Brenard Manufacturing Company that that firm ever saw or heard of the notes.

Appellant testified that in about three weeks after he saw the stranger he received a letter from *Iowa* stating that they had shipped him six or seven radios, and the next day the express man brought six or seven radios to his place of business, and he refused to receive them.

It was shown that measurements were taken of the signatures on each of the notes, and that the signatures on each were of the same measurement to the minutest fraction; that they were of the same width from left to right, and that all the letters forming the signatures were of the same size and height. It is hardly conceivable that any person could make signatures so exactly the same, except where they were made by tracing from a signature.

Having reached the conclusion, from all the evidence and circumstances shown, that the finding that appellant executed the notes was so against the weight and preponderance of the evidence as to be clearly wrong, it becomes our duty to reverse the judgment and remand the cause, and it is so ordered.

Reversed and remanded.